|  |  |  |
|---|---|---|
| FRANK C. RACITI, DARLENE A. RACITI, individually and on behalf of all others similarly situated, | : : : : : | Civil Action No.: 18-14869 (FLW) (LHG) **OPINION** |
| Plaintiffs, | : : |  |
| v. | : : |  |
| RUSHMORE LOAN MANAGEMENT SERVICES, LLC, | : : : |  |
| Defendant. | : : : |  |

**WOLFSON, Chief Judge:**

This matter comes before the Court on a Motion to Dismiss by Defendant Rushmore

Loan Management Services, LLC ("Rushmore" or "Defendant"), pursuant to Federal Rule of

Civil Procedure 12(b)(6), and Rushmore's Motion to Strike the Class Action Allegations

pursuant to Rule 12(f). Plaintiffs Frank C. Raciti and Darlene A. Raciti ("Plaintiffs") filed a

complaint, individually and on behalf of putative class members, wherein they allege that

Rushmore misrepresented the legal status of Plaintiffs' debt by seeking to collect payments on a

mortgage that had been discharged in bankruptcy, in violation of the Fair Debt Collection

Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"). For the reasons set forth

below, the Court **GRANTS** Rushmore's Motion to Dismiss, and Rushmore's Motion to Strike is

**DENIED** as moot.

## BACKGROUND

The following facts are taken from the Complaint and taken as true for the purposes of

this motion. Plaintiffs are residents of New Jersey, where this action arose. Complaint.

1

("Compl."), at ¶ 1. Rushmore is a residential mortgage servicer with its principal places of business in Irvine, California, Dallas, Texas, and San Juan, Puerto Rico. Plaintiffs allege that Rushmore is a debt collector under the FDCPA. *Id*. at ¶ 3. In 2014, Plaintiffs filed for bankruptcy listing Capital One, N.A. as a creditor holding a secured claim. The nature of the claim was listed as a third mortgage on a home located at 61 Readington Road, Whitehouse Station, NJ, the value of which was listed as $275,000.00. The mortgage was a debt owed jointly by Plaintiffs and the property was allegedly surrendered[1] and vacated by Plaintiffs shortly after the time of their bankruptcy filing. *Id*. at ¶ 22. On September 17, 2015, the United States Bankruptcy Court for the District of New Jersey ordered that Plaintiffs were entitled to a discharge of their debts. *Id*. at ¶ 24.

On November 14, 2017, after Plaintiffs had allegedly vacated the home, Plaintiffs received a notice from Capital One, N.A. informing them that the servicing of their home loan was assigned, sold, or transferred from Capital One, N.A., to Rushmore. *Id*. at ¶ 25. On November 22, 2017, Plaintiffs received a notice of assignment from Rushmore. The notice informed Plaintiffs that the servicing of their mortgage loan and the right to collect payments from Plaintiffs had been assigned, sold, or transferred from Capital One, N.A. to Rushmore. *Id*. at ¶ 27. On December 21, 2017, Plaintiffs received a second notice letter from Rushmore. The letter stated the amount of Plaintiffs' debt was $28,942.00. *Id*. at ¶ 30. Rushmore's second letter also provided that Plaintiffs' monthly payment amount was $220.02. *Id*. at ¶ 31.

On January 17, 2018, Frank Raciti was allegedly contacted by Rushmore via telephone. At that time, Mr. Raciti was allegedly asked to verify that he had recently made a payment of

---

[1] While the Plaintiffs plead that they vacated the property (*Id*. at ¶ 25), they do not allege that they were not the owners of the property.

$900.00 toward the loan at issue that had been previously discharged in bankruptcy. Plaintiff allegedly informed Rushmore that he had not made any payments and that he no longer had an attachment to the mortgaged property associated with that loan. *Id*. at ¶ 32. On May 29, 2018, after allegedly informing Rushmore that they no longer had attachments to the mortgaged property, Plaintiffs received a third notice, containing a home equity line of credit statement from Rushmore regarding the mortgage loan that had been discharged in bankruptcy. The statement noted that a minimum payment of $9,773.18 was due on June 25, 2018. *Id*. at ¶ 34.

On May 30, 2018, Plaintiffs received a fourth letter from Rushmore. In this forth letter, Rushmore informed Plaintiffs that they were responsible for paying the delinquency property tax against the property securing the referenced loan. The loan to which the letter referred was the mortgage that had been discharged in bankruptcy. *Id*. at ¶ 35. Furthermore, on or around June 11, 2018, Mr. Raciti accessed a copy of his credit report, which revealed that Defendant had made inquiries into Plaintiff's credit information on two occasions. The purpose of the requests is listed on his report as account review. *Id*. at ¶ 37.

On October 10, 2018, Plaintiffs brought this putative class action against Rushmore. The Complaint asserts seven causes of action against Rushmore, including: (1) violation of 15 U.S.C. § 1692(e)(2)(A); (2) violation of 15 U.S.C. § 1692(e)(10); (3) violation of 15 U.S.C. § 1692(f); (4) violation of 15 U.S.C. § 1681(b); (5) contempt; (6) negligent infliction of emotional distress; and (7) declaratory judgment. Plaintiffs claim that Rushmore violated the FDCPA because it misrepresented the legal status of Plaintiffs' debt by seeking to collect payments on a mortgage that had been discharged in bankruptcy and sent correspondence containing a minimum payment amount. *Id*. at ¶ 47. Furthermore, Plaintiffs claim that Rushmore violated the FCRA when Rushmore performed a pull of Mr. Raciti's credit information because Rushmore was not

engaged in a transaction with Plaintiffs and did not have a legitimate business need to conduct an inquiry into Mr. Raciti's credit. *Id*. at ¶ 72.

In the instant matter, Rushmore moves to dismiss Plaintiffs' Complaint in its entirety and moves to strike Plaintiffs' class action allegations. Rushmore argues that it is not a debt collector under the FDCPA because Plaintiffs have not sufficiently alleged that Rushmore's principal purpose is debt collection for another entity. In addition, Rushmore contends that because it had a credit transaction relationship with Plaintiffs, it had a permissible purpose for obtaining credit information under 15 U.S.C. § 1681b(a)(3)(A)-(F).

## DISCUSSION

### I.      Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

## II.    The FDCPA

Rushmore moves to dismiss Plaintiffs' FDCPA claims on the basis that it does not satisfy the statutory definition of a debt collector. Rushmore argues that Plaintiffs merely claim that Rushmore is a debt collector under the FDCPA but do not sufficiently allege facts to support that

claim. The Third Circuit has long recognized that the provisions of the FDCPA "generally only apply to 'debt collectors.'" *Pollice v. National Tax Funding*, L.P., 225 F.3d 379, 403 (3d Cir. 2000) (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)). "Debt collector" is defined under the statute as:

> any person: (1) 'who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' . . . ; or (2) 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another[.]

*Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) (quoting 15 U.S.C. §1692(a)(6)). Congress crafted a distinction between such "debt collectors" and "creditors" to reflect the real difference in incentives between collection actions taken by the actual owner of a debt and those undertaken by one who merely collects on behalf of others.

The FDCPA defines a "creditor" as: "[a]ny person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. §1692(a)(4). Moreover, "creditors who collect in their own name and whose principal business is not debt collection . . . are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill." *Pollice*, 225 F.3d at 403 (quoting *Aubert v. American Gen. Fin. Inc.*, 137 F.3d 976, 978 (7th Cir. 1998)).

Prior to the Supreme Court's decision in *Henson v. Santander*, 137 S. Ct. 1718 (2017), the Third Circuit applied the now-abrogated "default test" in order to determine if a post-assignment servicer or owner was a debt collector. Under that inquiry, an assignee of a debt which was still current (not in default) could collect on that debt without adhering to the requirements of the FDCPA. *Pollice*, 225 F.3d, at 403 (citation omitted). However, post-

assignment servicers and owners of debts that were in default at the time of assignment were treated differently, as the Third Circuit held that "an assignee may be deemed a debt collector" under such circumstances. *Id.* (quotations omitted). Indeed, the Third Circuit instructed that, after having determined that a loan was assigned after it went into default, a district court was required to examine whether the new servicer or owner of the debt fell within the FDCPA's "primary purpose" or "regularly collects" definitions of a debt collector.

However, in *Henson v. Santander*, the Supreme Court clarified the meaning of the "regularly collects" definition under the FDCPA. In that case, Santander Bank purchased loans which were already in default, and sought to collect on those debts for its own account. *Id.* at 1722. In determining whether Santander Bank acted as a debt collector under the law, the Supreme Court interpreted the plain meaning of §1692a(6)pursuant to the FDCPA, reasoning as follows:

> And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another'.

*Id.* at 1721. Accordingly, in light of this statutory interpretation, the Supreme Court ultimately concluded that Santander Bank could collect on defaulted debts for "its own account" without triggering the "regularly collects" definition of a debt collector pursuant to the FDCPA. *Id.*at 1722 ("[W]e don't see why a defaulted debt purchaser like Santander couldn't qualify as a creditor.").

In so holding, the Supreme Court abrogated the "default test" which the Third Circuit previously applied: "while the [FDCPA] surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition

must include anyone who regularly collects debts acquired after default." *Id.* at 1725; *Tepper*, 898 F.3d at 367 ("The Supreme Court . . . has recently repealed the 'default' test we followed.") (citation omitted). Indeed, according to the Supreme Court, "[a]fter all and again, under [the 'regularly collects' definition] you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector." *Henson*, S. Ct. at 1725. (emphasis in original). Accordingly, the current or defaulted status of an assigned debt on which an entity attempts to collect is of no significance for the purpose of determining whether it qualifies as a debt collector under the FDCPA's "regularly collects" definition. *Id.* ("So a company collecting purchased defaulted debt for its own account—like Santander—would hardly seem to be barred from qualifying as a creditor under the statute's plain terms.").

Here, Plaintiffs maintain that Rushmore is a debt collector under only the "regularly collects" definition of the term, and that it violated the FDCPA by misrepresenting the legal status of Plaintiffs' debt when it sought to collect payments on a mortgage that had been discharged in bankruptcy. However, Plaintiffs allege nothing more regarding Rushmore's status as a debt collector than that Rushmore is "a residential mortgage servicer" and a "debt collector under the FDCPA." Compl., ¶ 3. These allegations are plainly insufficient to adequately plead that Rushmore "regularly collects" debts owed to another. *See Green Tree Servicing, LLC v. Cargille*, No. 15-0938, 2019 WL 316750, at *3 (D.N.J. Jan. 24, 2019) (dismissing FDCPA claim against mortgage servicer when plaintiff failed to allege that servicer was not collecting on debt for its own account); *see also Kurtzman v. Nationstar Mortgage LLC*, 709 Fed.Appx. 655, 659 (11th Cir. 2017) (dismissing FDCPA claim against mortgage servicer when "[t]he complaint is silent regarding whether the principal purpose of [the defendant mortgage loan servicer's]

business is collecting debts, and it only generally asserts that 'regularly attempts to collect debts not owed to [it]'").[2]

Indeed, although Rushmore is a mortgage loan servicer and not the loan originator, servicers can and do collect on debts for their own accounts. *See Ramos v. Wells Fargo Bank, N.A*., 2019 U.S. Dist. LEXIS 69996, *15 (D.N.J. April 24, 2019). Thus, where, as here, a plaintiff fails to adequately allege that a servicer "regularly collects" debts for another, the statutory provisions of the FDCPA will not capture the servicer's actions. *Tepper*, 898 F.3d at 370 (noting that an entity that acquires debts and "then seeks to collect them for its own account is ineligible for the second definition because it is limited to those who regularly collect debts due a third party."); *Irina Chernyakhovskaya v. Resurgent Capital Servs. L.P.*, No. 16-1235, 2017 U.S. Dist. LEXIS 133286, at *23 (D.N.J. Aug. 18, 2017) ("[A]n entity that purchases a debt for its own account does not constitute a debt collector under the FDCPA[.]"). As such, Plaintiffs have not sufficiently alleged that Rushmore is a debt collector, and dismissal of Counts One, Two, and Three is appropriate.

## III.    The FCRA

---

[2] In their brief, Plaintiffs argue that because Rushmore identified itself as a debt collector in correspondence to Plaintiffs in its December 21, 2017 communications, Rushmore is a debt collector. *See* ECF No. 1-5 (advising plaintiffs that they "should consider this letter as coming from a Debt Collector as we sometimes act as a Debt Collector…"). However, to sufficiently allege that Rushmore is a debt collector under the FDCPA, Plaintiffs must plead in their Complaint that debt collection is Rushmore's principal business purpose or that it regularly collects loans for the account of another. A notice advising that Defendant "sometimes" acts as a debt collector does not do so. *See Green Tree Servicing*, 2019 U.S. Dist. LEXIS 11615, at *11 (holding that defendant was not a debt collector because plaintiffs did not allege that the defendant met either the "principal purpose" definition, or the "regularly collects for another" definition of a debt collector, despite the fact that defendant referred to itself as a debt collector in correspondence).

Plaintiffs allege that Rushmore violated the FCRA by impermissibly accessing Mr. Raciti's credit information. Compl. ¶ 70. In pleading the FCRA claim, Plaintiffs cite three provisions of the FCRA: 15 U.S.C. § 1681b(a), governing the circumstances under which a consumer reporting agency may furnish consumer reports; 15 U.S.C. § 1681a(d), defining a consumer report; and 15 U.S.C. § 1681n, providing civil damages for willful noncompliance. *Id.* at ¶¶ 68, 69, 71, 77, 78. Plaintiffs' FCRA claim is premised on the allegation that, post-discharge, Plaintiffs did not have a credit relationship or account with Rushmore. Plaintiffs allege that Rushmore did not have a permissible purpose in accessing Mr. Raciti's credit report because the debt on the account was discharged in bankruptcy. Rushmore argues, however, that while Plaintiffs have no personal liability on the secured lien following the bankruptcy discharge, Rushmore's continuing *in rem* rights and ability to collect the debt through its collateral (the property) continued to exist, creating a credit relationship and account, albeit without Plaintiffs' *in personam* liability.

Congress enacted the FCRA, 15 U.S.C. § 1681 *et seq.* "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." *Equifax v. Fed. Trade Comm'n.* 678 F.2d 1047, 1048 (11th Cir. 1982). In order to protect consumers from inappropriate pulls on their credit information, the FCRA outlines several instances within which permissible consumer reports may be made. Accordingly, "any consumer reporting agency may furnish a consumer report under the [enumerated] circumstances and no other." § 1681(b)(a). The list of permissible purposes for consumer reports include: to respond to a court order, to comply with a consumer's written instructions, to review credit as a person who is engaging in a transaction with the consumer or determining his eligibility to receive credit, or to serve a

legitimate business need. *Id.* The Third Circuit in *Houghton* held that "any § 1681(b)(3)(E)[3]

business transaction must relate to one of the other specifically enumerated transactions in §§

1681(a)(d) and (b)(3), *i.e.,* credit, insurance eligibility, employment, or licensing. This is to say

that a consumer relationship must exist between the party requesting the report and the subject of

the report." *Houghton v. N.J. Mfrs. Ins. Co.,* 795 F.2d 1144, 1149 (3d Cir. 1986); *see also Adams*

*v. LexisNexis Risk & Info. Analytics Group, Inc.*, 2010 U.S. Dist. LEXIS 47123, *20 (D.N.J.

May 12, 2010).

Here, although Plaintiffs are not personally liable for the discharged mortgage loan,

Rushmore's *in rem* right to the loan is a collectable debt, and thus, establishes a legitimate

business need for the credit pull. "Under the Bankruptcy Act of 1898, a lien on real property

passe[s] through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992);

*see Farrey* v. *Sanderfoot*, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured

interests survive bankruptcy"). Thus, a discharge of a plaintiff's personal liability does not

constitute the complete termination of an entity's claim against that plaintiff. *Johnson v. Home*

*State Bank*, 501 U.S. 78, 84 (1991). "Rather, a bankruptcy discharge extinguishes only one mode

of enforcing a claim – namely, an action against the debtor *in personam* – while leaving intact

another – namely, an action against the debtor *in rem.*" *Id.* That is, after the debtor's personal

obligations have been extinguished, the mortgage holder retains a right of payment by way of its

right to the proceeds from the sale of the debtor's property. *Id.* As such, an entity who has a claim

enforceable against the debtor's property nonetheless has a claim against the debtor. *Id.*

Indeed, Rushmore's *in rem* claim gives rise to the right to foreclose, which implies that

Plaintiffs' obligation, which remained after the Chapter 7 discharge of the *in personam* liability,

---

[3] Today, this Section is identified as Section 1681(b)(a)(3)(F).

is a debt. *In re Scotto-DiClemente*, 463 B.R. 308, 314 (Bankr. D.N.J. 2012). Accordingly,

Plaintiffs have the choice to either lose their property or pay the full amount of the *in rem* claim.

*Id.* Because Rushmore's *in rem* claim for the amount due under Plaintiffs' discharged mortgage

constitutes an enforceable debt owed by Plaintiffs, Rushmore had a legitimate credit relationship

with Plaintiffs and satisfied the statutory legitimate business need under 15 U.S.C. § 1681(b).[4]

Therefore, Rushmore's credit pull was permissible and Plaintiffs' FCRA claim (Count Four) is

dismissed.

## IV.     Contempt

Plaintiffs further claim that Rushmore knowingly violated the discharge order from the

Chapter 7 proceeding in the United States Bankruptcy Court for the District of New Jersey by

communicating with Plaintiffs for the purpose of collecting the discharged debt. Plaintiffs argue

that this Court should hold Rushmore in contempt under 18 U.S.C. § 401. However, I find that a

contempt sanction by me is inappropriate. Plaintiffs received a discharge from the United States

Bankruptcy Court for the District of New Jersey, not this Court, and thus this Court cannot

sanction Rushmore for disobeying another court's order. *See* 18 U.S.C. § 401(3) ("A court of the

---

[4] Plaintiffs cite to one out-of-circuit case for the proposition that Plaintiffs' allegedly
surrendering their home after their bankruptcy filing extinguished any legitimate business reason
for Defendant to access Plaintiffs' credit report. *See Gagnon v JPMorgan Chase Bank, N.A.,* 563
B.R. 835 (N.D. Ill. 2017). Notwithstanding the fact that *Gagnon* is not controlling and that Defendant
disputes that Plaintiffs surrendered the property post-discharge, to bring a claim for willful violation
of the FCRA, the conduct must be "objectively unreasonable." *Safeco Ins. Co. of Am. v. Burr*, 551
U.S. 47, 70 (2007). "So long as the conduct adopted by the company 'could reasonably have found
support in the courts,' no willful violation exists." *Sheldon v. Experian Info. Solutions, Inc.*, No. 08–
5193, 2010 WL 3768362, at *4 (E.D. Pa. Sept. 28, 2010) (quoting *Safeco*, 551 U.S. at 70 n.20). Here,
Plaintiffs freely admit that Defendant retained *in rem* rights to the loan post-discharge, and there is
ample case law holding that pulling a credit report in such circumstances does not violate the FCRA.
*See Farrin v. Nationstar Mortg. LLC*, 15-102, 2016 WL 6407841, at *10 (D.N.H. Oct. 28, 2016);
*Germain v. Bank of Am.*, No. 13-767, 2014 WL 5802018, at *5 (W.D. Wis. Nov. 7, 2014);
*Saumweber v. Green Tree Servicing, LLC*, No. 13-3628, 2015 WL 2381131, at *4 (D. Minn.
May 19, 2015). Thus, based on the pleadings, as a matter of law, Defendant's conduct was not
"objectively unreasonable."

United States shall have power to punish by fine or imprisonment, or both, at its discretion, such

contempt of its authority, and none other, as… [d]isobedience or resistance to its lawful writ,

process, order, rule, decree, or command"). Nevertheless, on the merits of the claim, because

there is no dispute that Rushmore retained the *in rem* right to the discharged debt, Rushmore did

not violate the Bankruptcy Court's discharge order; Rushmore had the right to enforce the

secured lien that survived the Chapter 7 bankruptcy discharge. *In re Scotto-DiClemente*, 463

B.R. at 314; *Johnson*, 501 U.S., at 84. Therefore, Count Five of Plaintiffs' Complaint is

dismissed.

## V.       Negligent Infliction of Emotional Distress

Plaintiffs claim that Rushmore has inflicted emotional distress on Plaintiffs by continuing

to harass them and using unfair means to collect a debt that it did not have a legal right to collect.

This claim also fails as a matter of law. A plaintiff must show the following four elements to

prevail on a claim for negligent infliction of emotional distress under New Jersey law: The

following elements are required for Plaintiff to show a *prima facie* claim of negligent infliction

of emotional distress: (1) the defendant had "a duty of reasonable care" to the plaintiff; (2) the

defendant breached said duty; (3) the "plaintiff suffered severe emotional distress"; and (4) the

breach proximately caused the plaintiff's injury. *See Dello Russo v. Nagel*, 358 N.J. Super. 254,

269, 817 A.2d 426 (App. Div. 2003). Plaintiffs' "claimed emotional distress must be sufficiently

substantial to result in physical illness or serious psychological sequelae." *Innes v. Marzano-*

*Lesnevich,* 435 N.J. Super. 198, 237 (App. Div. 2014)*, aff'd,* 224 N.J. 584 (2016). Here, aside

from the conclusory statement that "Plaintiffs have suffered emotional distress caused by

Defendant's unlawful behavior and violations of the FDCPA and FCRA," the Complaint contains

no allegations at all regarding Plaintiffs' alleged emotional distress. Therefore, Plaintiffs have

failed to sufficiently allege that they suffered severe emotional distress from Rushmore's communications regarding the discharged mortgage. Accordingly, Count Six of Plaintiffs' Complaint is dismissed.

## VI.     Declaratory Judgment

Plaintiffs seek a declaratory judgment finding that Rushmore's conduct violated the FDCPA and the discharge. Further, Plaintiffs claim that Rushmore should be enjoined from collecting or seeking to collect debts previously discharged in bankruptcy. However, having dismissed Plaintiffs' substantive claims, the Court need not separately address Plaintiffs' request for declaratory relief. Therefore, in light of the dismissal of the substantive claims, Plaintiffs' request for declaratory relief is denied.[5]

### CONCLUSION

In sum, the Court finds that Plaintiffs do not state a claim on any counts. Accordingly, the Court need not address Rushmore's motion to strike class allegations. As such, the Court **GRANTS** Rushmore's motion to dismiss and **DENIES** its motion to strike as moot.

Dated:  August 28, 2019                                    /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          U.S. Chief District Judge

---

[5] Having dismissed Plaintiff's substantive claims, the Court need not separately address Plaintiff's request for declaratory relief. The federal Declaratory Judgment Act is procedural and is not an independent basis for federal jurisdiction, so an action cannot proceed as a declaratory judgment action alone. *See MIIX Ins. Co. v. Associated Women's Health Specialists, P.C.*, No. CIV. 07-1635, 2007 U.S. Dist. LEXIS 85274, at *8 (D.N.J. Nov. 19, 2007) (explaining that "[t]he Declaratory Judgment Act is not an independent basis for federal subject matter jurisdiction; rather, "it gives district courts statutory discretion to decide whether to entertain actions for declaratory judgments") (citing *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 (3d Cir. 1989)).